## CRANE *vs.* HEARN and others.

1. It is the duty of a trustee to protect the trust estate from any misfeasance by his co-trustee, upon being made aware of the intended act, by obtaining an injunction against him; and if the wrongful act has been already committed, to take measures, by suit or otherwise, to compel the restitution of the property, and its application in the manner required by the trust.

2. Without such action, he would himself be liable, notwithstanding an indemnity clause in the instrument creating the trust, providing that neither trustee should be held responsible for the acts, omissions, or defaults of the other, in which they should not jointly participate, or of which they should not be jointly guilty, and limiting their liability, respectively, to ordinary care, diligence, and fidelity.

3. A discretionary power in trustees to make a gift, which is matter of bounty merely, and not of right, cannot be exercised by one trustee alone. The concurrence of both is necessary.

4. A person creating a trust by solemn instrument, cannot sanction a *devastavit* of the estate, or a breach of the trust, where, by the terms of the trust, other persons have a contingent interest in the trust estate, and their rights and interest may be affected by the breach.

5. Trustee removed, with directions as to accounting.

Bill for injunction, for account, and removal of co-trustee, &c.

*Mr. E. S. Atwater*, for complainant.

*Mr. A. B. Bunting*, for defendants.

THE CHANCELLOR.

The complainant, Dr. Crane, and the defendant, Miss Hearn, are the trustees under a trust deed executed by Mrs. Jouet and her husband, the other defendants, by which all the property of Mrs. Jouet, acquired or to be acquired, was conveyed to be held in trust for her sole use and benefit during her coverture; to secure, invest and improve the trust premises for her, and to collect and receive the annual income, dividends, interest and proceeds thereof, and to pay the same over to her, from time to time, when and as they should be received by the trustees, or either of them, during her coverture, for her own individual use and benefit, and upon her separate receipt, and without the sanction or concurrence of Mr. Jouet, her husband, and in the same manner and with the like effect as if she were sole; and in the event of her surviving her husband, on the further trust, forthwith to reconvey and revest the trust premises, or so much thereof as may then remain, to and in her, her heirs, executors, administrators and assigns, to and for her and their own proper use, benefit and behoof, forever; and on the further trust, that in the case Mr. Jouet should survive her, to make over and transfer, assign and deliver the trust premises, or so much thereof as may remain,

to her lawful children, their heirs and assigns, in equal shares; or if she leaves no child or children, then to such person or persons as would, in that case, be her right heir or heirs-at-law, had she remained unmarried; and upon the further special confidence and trust, and with power and authority to that end, in their discretion, but not in any manner as a right on the part of Mr. Jouet, to give and to bestow upon him such portion or portions of the trust property as they may deem proper, either during or after the coverture. The deed provides, also, for conversion of the estate by the trustees, with Mrs. Jouet's written consent, into other property, to be held under the same trusts. The trust estate consisted, in 1874, of a farm in the township of Linden, in the county of Union, in this state, in the occupation of Mr. and Mrs. Jouet, on which there were then taxes and assessments in arrear, which the trustees had no funds to pay. The trustees, having authority for the purpose, executed and delivered, in the summer of that year, a mortgage for $10,000 on the farm. Of the mortgage money, $9346.89 were sent to them by mail, by a draft of The Trenton Banking Company on The Manhattan Company of New York, dated July 18th, 1874, payable to the order of S. M. Dickinson, and by him endorsed with a direction to "pay to the order of the trustees of Henrietta H. Jouet." In the absence of the complainant from home, on a visit of a fortnight, to Long Island, his co-trustee, Miss Hearn, who is the sister of Mrs. Jouet, and was, as she still is, a member of Mr. Jouet's family, received the draft on the 23d of July, 1874, and on the same day endorsed it in blank as trustee, and handed it over to Mr. Jouet, who gave her a receipt for it, as having been received by him from her as trustee of his wife, "under authority of a certain clause in the said trustee deed." Mr. Jouet, with but little delay, obtained the money for the draft, but not without difficulty, seeing that it was payable, by the endorsement, to the trustees, and Miss Hearn alone had endorsed it to him. This difficulty, however, he overcame, by procuring a person to join him in a guarantee of the endorsement. The mortgagees

appear to have retained for a short time the balance of the $10,000, as indemnity against certain judgments which it was supposed might be a lien on the farm. Miss Hearn testifies that that balance was not received by her, but was afterwards paid, either to Mr. or Mrs. Jouet. The money received by Mr. Jouet was expended by him in various ways; some of it, it is said, for the benefit of the trust estate. No vouchers, however, are produced for any of the payments. A large part of the money was admittedly spent by him in paying his personal debts, and for other private purposes of his own. Dr. Crane neither authorized nor consented to the payment of the money to Mr. Jouet, nor was he aware that Miss Hearn contemplated making it. As soon as he ascertained that it had been made, he filed his bill in this cause to restrain her and Mr. Jouet from expending the money, and for an account in the premises. It was his duty to do so, in order to save himself from liability on account of the transaction, notwithstanding the indemnity clause in the deed, by which it is provided that the trustees, in the performance of the trusts, shall not be held responsible or made accountable for the acts, deeds, omissions, or defaults of each other, in which they shall not jointly participate, or of which they shall not be jointly guilty, and that their respective liability and accountability shall not extend beyond the exercise of ordinary care, diligence, and fidelity. It is the duty of one trustee to protect the trust estate from any misfeasance by his co-trustee, upon being made aware of the intended act, by obtaining an injunction against him; and if the wrongful act has been already committed, to take measures, by suit or otherwise, to compel the restitution of the property, and its application in the manner required by the trust. *Hill on Trustees* 314; *Laroe* v. *Douglass*, 2 *Beas.* 308; *Perry on Trusts*, § 417. The act of Miss Hearn in paying this money to Mr. Jouet was a clear breach of her trust. The object of the trust was, as appears by the deed, to secure the trust estate against Mr. Jouet and the claims of his creditors. Although the trustees were clothed with authority in their discretion to bestow upon him, during

or after the coverture, such portion or portions of the trust property as they might deem proper, it was expressly declared that such gift was of bounty merely, and in no wise a matter of right.   In making such gifts, the concurrence of both of the trustees was necessary.   *Willard's Eq.* 612 ; *Story's Eq. Jur.*, § 1062 ; *Holcomb* v. *Holcomb's Ex'rs*, 3 *Stockt.* 476, 485.   The allegation in the answer, that the payment to Mr. Jouet was made with the approbation of Dr. Crane, is not only unsupported, but is entirely disproved.   The case, as it stands before me, compels to the conclusion that advantage was taken of the opportunity afforded by the temporary absence of Dr. Crane to make a payment to which the parties knew he would not consent.   The money was obtained on the draft not only without his signature, but in spite of the absence of it.   Not only was his endorsement known to be necessary to the regularity of the transaction, but an indemnity was required as to the validity of the endorsement by Miss Hearn alone, before the money could be got for the draft.   So flagrant a violation of the obligations imposed upon Miss Hearn must, of necessity, be visited with its appropriate consequences.   She claims to have acted on the advice of counsel.   It does not appear by whom the reprehensible advice was given, but it is understood that it was not by any solicitor or counsellor of this court.   She must account to her co-trustee for the money paid to Mr. Jouet.   She will be allowed in the account, for all proper payments made by the latter for the benefit of the trust estate.   She will also be required to account for all other money and property received by her belonging to the trust estate, and will, in the account, be allowed for all proper payments.   She must pay over to her co-trustee any moneys of the trust estate which are or shall be found by the account to be in her hands, or with which she is justly chargeable, and must deliver over to him all property and papers of the estate in her possession, or under her control. The circumstances of the case are such as to render it improper that she should be continued in her office of trustee, and she will be removed accordingly.   Mr. Jouet will be re-

quired to account for and pay over to Dr. Crane so much of the money paid to him by Miss Hearn as remains in his hands unexpended, and the amount will, of course, when paid, be allowed to Miss Hearn in her account. It was urged on the hearing, in behalf of Miss Hearn, that inasmuch as Mrs. Jouet is satisfied with the action of the former, in paying over the money in question to her husband, there can be no ground of complaint. The trust was created for the benefit of Mrs. Jouet and her children; she to have the income only during coverture. If she survives her husband, the estate, or what remains of it, is to be conveyed to her. If he survives her, the property, on her death, is to go to her child or children. If she leaves no child or children surviving her, then it is to go to such person or persons as would, in that case, be her right heir or heirs-at-law, had she remained unmarried. It will be seen that, apart from the fact of her coverture, she is in no situation to discharge, even by her active participation, a *devastavit* of the corpus of the estate. If she shall predecease her husband, the trust estate, or what remains of it, will go to her children, if she leaves any; if not, then to those who would by law be entitled to her property, had she never been married. .